IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| HORNADY TRANSPORTATION LLC and THE HORNADY TRANSPORTATION GROUP PLAN, | ) ) ) | Civil Action No. 3:10-cv-02461-CMC |
| | ) | |
| Plaintiffs, | ) ) | OPINION AND ORDER |
| v. | ) ) | |
| | ) | |
| MCLEOD HEALTH SERVICES, INC., d/b/a MCLEOD REGIONAL MEDICAL CENTER, and BLUE CROSS BLUE SHIELD OF SOUTH CAROLINA, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court on motions to dismiss filed by Defendants Blue Cross and

Blue Shield of South Carolina (BCBS-SC) and McLeod Health Services, Inc. d/b/a McLeod

Regional Medical Center ("McLeod").[1]  Dkt. Nos. 38, 39.  Both motions are pursued under Rule

12(b)(6) of the Federal Rules of Civil Procedure and rest on arguments that (1) Plaintiffs' state law

claims are completely preempted under the Employee Retirement Income Security Act of 1974, 29

U.S.C. § 1001 *et seq.* ("ERISA"), and (2) Plaintiffs' ERISA claims cannot be pursued against the

named Defendants. Based on this two-fold argument, Defendants seek dismissal of all claims

asserted against them.

_____

[1]  The court identifies this Defendant using the name found in the amended complaint but notes that the name may be incorrect. *See* Dkt. No. 5 (Local Civil Rule 26.01 response disclosing that this Defendant is misidentified in the original complaint), Dkt. No. 39 at 5 (arguing for dismissal based on the misidentification which is repeated in the amended complaint).  While this misidentification may ultimately have adverse consequences for Plaintiffs if not promptly cured, the court declines to dismiss based on the alleged misidentification on the present motion which is pursued under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

For the reasons set forth below, the court finds it doubtful that any of Plaintiffs' state-law claims survive ERISA preemption. This conclusion is not, however, certain due to the novel circumstances presented in this case which are not directly addressed nor clearly predicted by any controlling authority. The court, therefore, declines to dismiss Plaintiff's state law claims at this stage of the proceedings.

The court also declines to dismiss Plaintiffs' ERISA claims despite potential difficulties with at least some of them because Plaintiffs have alleged facts which present a plausible basis for asserting at least one ERISA claim against each of the Defendants. As with the state law claims, Plaintiffs' ERISA claims present novel circumstances not directly addressed nor clearly predicted by controlling authority. These rulings are without prejudice to renewal of the same arguments on motion for summary judgment after the completion of discovery.[2]

## STANDARD

A motion under Federal Rule of Civil Procedure 12(b)(6) should be granted only if, after accepting all well-pleaded allegations in the complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of its claims that entitles it to relief. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). Although the court must take the facts in the light most favorable to the plaintiff, it "need not accept the legal conclusions [the plaintiff would draw] from the facts." *Giarratano v. Johnson*,

---

[2] As noted above, McLeod also argues that the amended complaint should be dismissed as to it because it is misidentified. McLeod also suggests, although it does not directly argue, that the amended complaint should be dismissed because Plaintiffs (1) failed to file the amended complaint by the deadline set in the docket text order which granted the motion to amend and (2) failed to name an indispensable party, Blue Cross Blue Shield of Alabama (BCBS-Alabama). While the court agrees that the amended complaint was untimely filed, the delay was minimal and the court finds it insufficient to support dismissal. The argument as to non-joinder of an indispensable party is only mentioned in a footnote and, consequently, is not adequately addressed to support either dismissal or the forced joinder of this party. Dkt. No. 39 at 19.

521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)).  The court may also disregard any "unwarranted inferences, unreasonable conclusions, or arguments."  *Id.*

The Rule 12(b)(6) standard has often been expressed as precluding dismissal unless it is certain that the plaintiff is not entitled to relief under any legal theory that plausibly could be suggested by the facts alleged.  *See Mylan Labs., Inc. v. Markari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Nonetheless, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (quoted in *Giarratano*, F.3d at 302).  *See also Wolman v. Tose*, 467 F.2d 29, 33 n.5 (4th Cir. 1972) ("Under the liberal rules of federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the court to infer that all the required elements of the cause of action are present.").

Thus, in applying Rule 12(b)(6) the court also applies the relevant pleading standard. Despite the liberal pleading standard of Rule 8, a plaintiff in any civil action must include more than mere conclusory statements in support of its claim.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (court need only accept as true the complaint's *factual* allegations, not its legal conclusions); *see also Bass v. Dupont*, 324 F.3d 761, 765 (4th Cir. 2003) (holding that "[w]hile a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff is required to allege facts that support a claim for relief.").

## BACKGROUND

**Prior proceedings.**  The court initially reviewed this matter on motion to remand filed by Plaintiff Hornady Transportation, LLC ("Hornady"), which was then the sole Plaintiff.  Based on its initial review, the court held "that Plaintiff's claims arise under and are governed by the terms of an employee welfare benefit plan, are pursued in Plaintiff's capacity as a Plan fiduciary, seek

relief on behalf of the plan and, consequently, are subject to complete preemption under the Employee Retirement Income Security Act ("ERISA")." Dkt. No. 24 (denying motion to remand). In reaching this conclusion the court adopted the reasoning set forth in Defendants' joint memorandum in opposition.

To the extent the order denying the motion to remand may foreclose the possibility that any state law claim might survive, it is now modified. While the court continues to believe that the claims advanced in the original complaint, as well as the state law claims asserted in the amended complaint, are subject to complete preemption under ERISA, these conclusions are not free from doubt for reasons discussed below.[3] Moreover, regardless of Plaintiffs' theories of recovery, the discovery needed to resolve Plaintiffs' claims will be essentially the same assuming even one of Plaintiffs' theories survives. The court, therefore, concludes that the better course is to leave open whether *any* state law claim survives ERISA preemption until after the close of discovery.

**Nature of claims.**[4] The claims in this action clearly relate to payment of benefits under an ERISA-governed employee benefit plan. The relationships of the parties and nature of the claims are, however, far from the typical ERISA action. This is, first, because this action is one brought by a self-funded plan and that plan's sponsor, primarily seeking recovery of alleged overpayments

---

[3] The amended complaint varies in several respects from the original. First, the employee benefit plan itself is named as Plaintiff. Second, Plaintiffs clarify that they are not claiming that BCBS-SC was responsible for determining if the services at issue were covered by the Plan. Finally, the original two state law claims are repleaded as three state law claims and two claims under ERISA. Despite these changes, the central factual allegations remain the same.

[4] This section provides an overview of Plaintiffs' factual allegations and legal theories. A more detailed summary of the original and amended complaints is presented in the following section headed "Allegations of Complaints." The court includes the latter, more detailed summary of both complaints because the propriety of removal (which is, to some degree, addressed by this order) was determined based on the allegations in the original complaint, while Defendants' motion to dismiss is directed to amended complaint.

4

to a medical provider (McLeod). Thus, this case presents the reverse of the usual scenario of beneficiary or medical provider (as assignee of beneficiary) seeking payment of benefits from the plan. The basis of the claim of overpayments is, moreover, founded on an agreement between the medical provider and a third-party, BCBS-SC. That agreement is distinct from and exists independently of *any* employee benefit plan yet is arguably incorporated into the relevant plan by virtue of another agreement or program expressly referenced in the plan documents.

The claims are further complicated (and made novel) by the inclusion of claims against an entity (BCBS-SC) which was involved in the processing of the claims (at least by providing pricing information) but may not have been responsible for the ultimate approval of the claim or disbursement of funds. Thus, its role as a "fiduciary" is subject to challenge though, for reasons explained below, is not clearly foreclosed.

The entity which served as primary claims-processor and which made the ultimate decision to disburse funds is not named as a party. This throws a further variation into the case.

**Parties.** Hornady, originally the sole Plaintiff, is an employer which sponsored a self-funded health benefits plan. That plan, the Hornady Transportation Group Medical Plan ("the Plan"), is now named as a Plaintiff. Either the Plan itself or Hornady acting as fiduciary of the Plan (or both) entered an Administrative Services Agreement ("ASA") with Blue Cross and Blue Shield of Alabama ("BCBS-Alabama"), which is not a party to this action. *See* Dkt. No. 19-2 at 65-78. Under the ASA, BCBS-Alabama was to administer the Plan including approving benefits for payment and, apparently, advancing funds for payment of those benefits.

One benefit the Plan (and its participants) received under the ASA was participation in the "Blue Card Program." Dkt. No. 19-2 at 14 (Plan booklet describing "In-Network Benefits").[5] This program extends the benefits of Preferred Provider Agreements negotiated by one member of the Blue Cross and Blue Shield Association ("BCBS-Association") to entities which have entered an ASA with another member of the BCBS Association. Thus, by entering an ASA with BCBS-Alabama, the Plan gained the benefit of Preferred Provider Agreements negotiated by other BCBS Association members including Defendant BCBS-SC. Defendant McLeod is one entity which had a Preferred Provider Agreement with BCBS-SC.

The claims at issue in this action relate to medical benefits provided by McLeod to Virginia China ("China"), who was a participant in the Plan. Hornady and the Plan allege that those claims (which totaled over $1,000,000) were paid at a rate higher than allowed under the Preferred Provider Agreement between BCBS-SC and McLeod. They also allege, albeit without any specificity, that McLeod charged for some services which were not provided. Plaintiffs allege that BCBS-SC played a role in the payment of claims to McLeod which involved a step through which BCBS-SC should have confirmed that the payments were in accord with the Preferred Provider Agreement between BCBS-SC and McLeod.

## ALLEGATIONS OF COMPLAINTS

**Original Complaint.** The original complaint was pursued solely by Hornady. In its first cause of action, Hornady alleged that both BCBS-SC and McLeod breached contractual duties to Hornady as third-party-beneficiary of (1) the Blue Card Program (an agreement between the various

---

[5] On the same page, the Plan booklet explains the relationship between BCBS-Alabama, the Blue Cross and Blue Shield Association ("BCBS Association"), and other Blue Cross entities such as BCBS-SC. It then disavows any contractual obligation on the part of any such entity, other than BCBS-Alabama, to the *beneficiaries* of the Plan.

members of the BCBS-Association) and (2) the Preferred Provider Agreement (between BCBS-SC and McLeod). Complaint ¶¶ 21-24. Hornady further alleged that the provisions of the Blue Card Program were made a part of its "contract" with BCBS-Alabama. *Id.* ¶ 24 (alleging that both BCBS-SC and BCBS-Alabama "intended for [employers such as Hornady and their employees] to benefit from the Blue Card Program and the Program was marketed as a benefit to employees and was, in fact, incorporated within the contracts (including the Hornady contract))."

Hornady identified BCBS-SC's "breaches" as including a "fail[ure] to properly examine the claims to insure proper billing and discounts were applied in accordance with the local provider agreements." *Id.* ¶ 17. Hornady further alleged that BCBS-SC "had an obligation to examine and monitor claims from McLeod to insure compliance with local provider agreements and failed to do so." *Id.* ¶ 19. According to the original complaint, these errors caused BCBS-Alabama to pay McLeod more than it properly should have paid under the terms of the Blue Card Program. *Id.* ¶ 15 (alleging BCBS-SC received the claims from McLeod and passed them on to BCBS-Alabama which, "relying on the Blue Card agreement, paid those claims rightfully assuming that the charges were correct and in compliance with local provider agreements between [BCBS-SC] and McLeod."); *see also* Complaint ¶¶ 9-10 (asserting that the Blue Card Program included an agreement between Blue Cross entities to "provide each other with assistance in processing claims" when a participant in a covered plan received care in a state other than his plan's home state). Notably, Hornady alleged that BCBS-Alabama was authorized to pay claims (including the large claims relating to China's care) without prior approval from Hornady or the Plan. Complaint ¶¶ 7-8.

Although this cause of action focused on alleged contractual breaches by BCBS-SC, Hornady concluded that both BCBS-SC *and McLeod* were liable because "Hornady was

overcharged for services not delivered[6] or for charges in excess of what was permissible under the BCBSSC/McLeod local provider agreements." *Id.* ¶¶ 26-27; *see also id.* ¶ 20 (identifying McLeod's malfeasance as having "accepted payment for services provided to China which it knew or should have known was not in compliance with local provider agreements made with [BCBS-SC].").  Hornady also asserted a second, *quantum meruit*, claim solely against McLeod seeking to require it to "return excess monies accepted by it in violation of the local provider agreements with [BCBS-SC]."

**Amended Complaint.**  After the court denied Hornady's motion to remand, Hornady and the Plan (collectively "Plaintiffs") filed an amended complaint.  This complaint includes three somewhat modified state law claims and adds two claims under ERISA.  Each of these claims is asserted against one or both of the original Defendants.  Dkt. No. 36 (Amended Complaint).  Plaintiffs also added allegations apparently intended to support the assertion of jurisdiction against BCBS-Alabama and suggesting some malfeasance by that entity.  They did not, however, name BCBS-Alabama as a Defendant.  Complaint ¶¶ 5, 23.

The first cause of action in the amended complaint is for breach of contract and appears to be asserted solely against BCBS-SC, although this is not entirely clear.[7]  The allegations are

---

6 This reference to charges for services not delivered appears to be the only such reference in the original complaint.  Indeed, although it would appear the better placement, Hornady does not seek reimbursement of charges for services not performed through its second cause of action, a *quantum meruit* claim against McLeod. There is, in any event, no allegation that BCBS-SC (or BCBS-Alabama) had any duty to determine whether services were actually performed.

7 The heading for the first cause of action states that it is asserted "(against BCBSSC)[.]" Nonetheless, Plaintiffs include allegations that "[BCBS-SC] "*and McLeod* were aware of their obligations to apply local provider agreements to any claims submitted for Hornady employees[,]" and conclude this claim by stating "McLeod accepted payment for services . . . which it knew or should have known was not in compliance with local provider agreements made with [BCBS-SC]." Am. Complaint ¶¶ 22, 24.  One paragraph also suggests an intent to hold BCBS-Alabama liable under this claim, although it has not been named as a party.  Am. Complaint ¶ 23 (quoted *supra*).

substantially similar to those in the original complaint and include allegations that (1) "McLeod presented claims to [BCBS-SC] for the treatment of Ms. China in excess of $1,000,000[,]" (2) BCBS-SC, in turn, presented those claims to BCBS-Alabama, (3) BCBS-Alabama, "relying on the Blue Card agreement, paid those claims assuming that the charges were correct and in compliance with local provider agreements between [BCBS-SC] and McLeod[,]" but (4) "in fact, the claims contained numerous inaccuracies and improper billing and were not discounted in accordance with the local provider agreements." Am. Complaint ¶¶ 17-19. Plaintiffs further allege that BCBS-SC "failed to properly examine the claims to insure proper billing and discounts were applied in accordance with local provider agreements." *Id.* ¶ 20. Plaintiffs disavow any claim that BCBS-SC "was responsible for determining if the types of services provided were covered by the Plan[,]" but conclude that "[BCBS-SC] and [BCBS-Alabama] had an obligation to examine and monitor claims from McLeod to insure compliance with local provider agreements and failed to do so." *Id.* ¶¶ 21, 23.

The second cause of action is asserted "against all Defendants[,]" under a third-party beneficiary theory.[8] Plaintiffs allege, *inter alia*, that BCBS-SC and BCBS-Alabama "intended Blue Card to benefit Members and employers[,]" utilized the program to "offer nationwide competitive rates to their own local Members and employers[,]" and marketed these benefits to employers such as Hornady. *Id.* ¶¶ 27, 29. They also allege that BCBS-SC "and McLeod had a contract under which "McLeod provid[ed] favorable rates in return for access to provide services to . . . [BCBS-SC] Members" and patients covered by plans administered or insured by other members of the [BCBS]

---

[8]  As with the first cause of action, this claim includes allegations which suggest an intent to proceed against BCBS-Alabama, although that entity is not named as a Defendant. *See, e.g., id.* ¶¶ 26-27.

Association.  Thus, Plaintiffs allege that they were intended third-party beneficiaries both of the Blue Card Program and the incorporated Preferred Provider Agreement between BCBS-SC and McLeod.  Plaintiffs further allege that they were denied the intended benefits because they were charged in excess of what is allowed under McLeod's Preferred Provider Agreement.  Based on these allegations, Plaintiffs allege that "[BCBS-SC] and McLeod are liable to Hornady for . . . overcharges."

Plaintiffs also assert a claim for *quantum meruit* solely against McLeod.  This cause of action not only pursues repayment of overcharges which were not in accordance with the "local provider contracts" between BCBS-SC and McLeod, but expressly alleges that "McLeod billed for services not provided."  *Id.* ¶¶ 35-36.

Plaintiffs' fourth cause of action is a claim for equitable relief under ERISA and, like the second cause of action, is asserted "(against all Defendants)[.]"  Plaintiffs allege that they are both fiduciaries entitled to bring an equitable action to recover improperly paid benefits.  *Id.* ¶ 40.  They also allege that McLeod is a "beneficiary" under ERISA and BCBS-SC is a fiduciary.

The fifth and final cause of action is an ERISA breach of fiduciary duty claim and is asserted only against BCBS-SC.  In this claim, Plaintiffs allege that BCBS-SC "had and/or exercised discretion in paying benefits on claims" and that both BCBS-SC and BCBS-Alabama "are fiduciaries under ERISA."  *Id.* ¶¶ 44-45.  Plaintiffs allege that BCBS-SC breached its fiduciary duty by "fail[ing] to determine that benefits were paid in accordance with the Blue Card [P]rogram[.]"  *Id.* ¶¶ 46-47.

## DISCUSSION

Plaintiffs' claims appear at present to be dependent on the existence of the Plan and to require consideration of the terms of the Plan for their resolution. This is because it is only through the Plan and related ASA that Hornady, its Plan, and its employees were eligible to participate in the Blue Card Program and, through that program, to receive services at discounted rates under McLeod's Preferred Provider Agreement with BCBS-SC. *See* Dkt. No. 19-2 at 14 (Plan document addressing Blue Card Program). In addition, the claims asserted against BCBS-SC all relate to its alleged role in the processing of claims under the Plan while the claims asserted against McLeod derive from its receipt of benefits as assignee of a plan participant.

For reasons discussed below, these factors suggest (and this court has previously concluded) that Plaintiffs' state-law claims are subject to complete preemption under ERISA, a concept which requires that the claims not only be related to but also fit within the scope of ERISA's civil enforcement provisions.[9] The court further concludes that although some doubts may be raised as to the ultimate viability of Plaintiffs' ERISA claims, they should not be dismissed at this stage of the proceeding. *See* Discussion § I. Finally, although it is doubtful any of Plaintiffs' state law claims survive ERISA's broad preemptive scope, the court finds the nature of the claims sufficiently novel to justify denial of Defendants' motions as to these claims prior to completion of discovery. *See* Discussion § II.

---

[9] As explained in *Sonoco Products Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366 (4th Cir. 2003), preemption under ERISA falls into two distinct categories: (1) conflict preemption which merely provides a defense (but not a basis for removal); and (2) complete preemption, which provides a basis for the assertion of federal subject matter jurisdiction. *Id.* at 371. To support complete preemption, a claim must not only "relate to" an ERISA Plan, but must fit within the scope of ERISA's civil enforcement provisions. This suggests a certain tension between Defendants' arguments in opposition to remand and their current arguments in favor of dismissal of *all* claims.

### I.    ERISA CLAIMS

Because the court believes the matter is governed by ERISA, it begins its analysis of Defendants' motions by considering the viability of the ERISA claims asserted in the amended complaint. The first step in that analysis is to determine whether Plaintiffs have standing to pursue a claim under ERISA. *Sonoco Products,* 338 F.3d at 372.[10]

### A.    Plaintiffs' Standing as ERISA Fiduciaries

In the amended complaint, the Plan and Hornady allege that they are both "fiduciaries under [ERISA] and are entitled to bring [an] equitable action to recover improperly paid benefits[.]" Amended Complaint ¶ 40. As plan sponsor, Hornady acts in a fiduciary capacity to the extent it "exercises discretionary authority over the management or administration of the plan." *Sonoco Products*, 338 F.3d at 372-73 (internal marks omitted). By contrast, it does not act as a fiduciary when it acts solely as the "settlor" of the plan. *Id.* at 373 (holding that employer lacked standing to bring an action under ERISA's civil enforcement provisions against an insurer for wrongful cancellation of insurance coverage where, despite being a fiduciary (as plan sponsor), it consistently maintained that it was not asserting claims in its fiduciary capacity).

In holding that Sonoco was not acting as a fiduciary, the Fourth Circuit noted that the employer's "claims relate[d] solely to its own injuries, and not to its fiduciary responsibilities to the plan or to the plan's participants and beneficiaries." *Id.* at 373. The injuries at issue consisted of the added costs Sonoco incurred in purchasing replacement coverage after the defendant-insurer cancelled the policy through which the plan was funded. The court considered this situation

---

[10]    Defendants do not appear to challenge Plaintiffs' claims on this basis. The court, nonetheless, begins its analysis with an evaluation of the capacity in which Plaintiffs are proceeding as this issue is also relevant to whether the matter was properly removed.

analogous to an employer's malpractice claim against an accountant hired to set up a pension plan where the employer sought compensation for its own injuries– a scenario the Ninth Circuit had held was not subject to complete preemption. *Id.* (discussing *Toumajian v. Frailey,* 135 F.3d 648 (9th Cir. 1998).).    The present action bears some similarities to *Sonoco Products* in that one Plaintiff, Hornady, is a plan sponsor and one Defendant, BCBS-SC is an insurance company (albeit one acting in a role other than as insurer) from which Hornady seeks relief based on claims that the insurer breached duties relating to an employee benefit plan which caused injury to Hornady.  These similarities are, however, overshadowed by important distinctions.  First, the injury at issue in this case necessarily flows through the Plan, rather than being a direct injury to the employer.  Further, the injury may only be proven by  establishing a breach of the terms of the Plan (and its incorporated agreements).  In addition, BCBS-SC is not acting here as an insurer.  Instead, the duties it allegedly breached related to the processing of claims which an "associated" entity  (BCBS-Alabama) had discretionary authority to pay and allegedly paid in reliance on information provided by BCBS-SC. These are significant distinctions from the claims in *Sonoco Products*.[11]  On the present record, they persuade the court that Hornady is proceeding in its fiduciary capacity in seeking reimbursement of money paid out through the Plan.  *See generally Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1466 (4th Cir. 1996) (concluding that employer, as plan sponsor, had "standing to sue as a fiduciary 'to

---

[11] To determine whether there was an injury in *Sonoco Products*, the fact-finder needed only to look at the terms of the insurance contract, not the underlying employee benefit plan.  The extent of the injury, in turn, required comparison of the prices and terms of original and replacement policies. Unlike the present case, neither determination required the fact-finder to examine the terms of the plan *per se* or to determine the nature, extent and propriety of any entity's performance of claim-processing duties under an employee benefit plan.

the extent' that it challenges, as violative of ERISA . . . , any act or practice which pertains to" the responsibilities it possesses as a fiduciary).

Claims asserted directly by the Plan are, likewise, pursued in a fiduciary capacity as the Plan is, necessarily, seeking relief for the benefit of the Plan. This is true even if the amounts recovered would, ultimately, flow back through the Plan to the employer, Hornady.[12]

## B.    ERISA Claims against BCBS-SC

BCBS-SC argues that the two ERISA claims asserted against it fail as a matter of law. This argument is based, in part, on a claim that BCBS-SC is not a fiduciary under the Plan. BCBS-SC also argues that the claims against it fail even if it is a fiduciary for some purposes.

**Allegations of BCBS-SC Fiduciary Status.** The amended complaint alleges that BCBS-SC acted as a fiduciary with respect to the payment of claims to McLeod and includes factual allegations from which such an inference may reasonably be drawn. Amended Complaint ¶¶ 42, 44-46 (alleging, *inter alia*, that "BCBS-SC had and/or exercised discretion in paying benefits on claims" and "failed to determine that benefits were paid in accordance with the Blue Card [Program]"). The more detailed factual allegations asserted under the state law claims and incorporated into the ERISA claims also support a reasonable inference that BCBS-SC had and exercised some discretionary authority with respect to the Blue Card Program the terms of which were available to Plaintiffs through the Plan and ASA.[13]

---

[12] The conclusion as to Plaintiffs' standing is the same both as to the claims against BCBS-SC (claims-processing role) and those against McLeod, as recipient of a payment made on behalf of a beneficiary. As to both, Plaintiffs' pursuit of relief is based on allegations that claims were improperly processed and paid under the Plan.

[13] **Original Complaint.** Although the original complaint made no allegations relating to fiduciary duty, it did allege that BCBS-SC had and breached a *contractual* duty "to properly

These allegations are sufficient to support an inference that BCBS-SC acted as a fiduciary to the Plan at least in some respects.[14] *See Wilmington Shipping*, 496 F.3d at 343 (noting "fiduciary status under ERISA is not 'an all or nothing concept'") (quoting *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir. 1992)).  As explained in *Wilmington Shipping*, one may be a fiduciary

> *to the extent that* (I) he exercises any discretionary authority or discretionary control, respecting the management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation . . . , or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

_____

examine the claims to insure proper billing and discounts were applied in accordance with local provider agreements."  Complaint ¶17.  In denying remand based on a theory of complete preemption, this court construed this and related statements as an allegation that BCBS-SC exercised some level of "control respecting management or disposition of [Plan] assets." *Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 343 (4th Cir. 2007).  This conclusion was based on the alleged interrelationship between BCBS-SC and BCBS-Alabama under the Blue Card Program which, according to the Complaint, resulted in BCBS-Alabama's disbursement of funds based on information provided by BCBS-SC as to proper rates of compensation.

**Amended Complaint.**  The amended complaint, by contrast, expressly alleges that BCBS-SC is a fiduciary to the Plan under ERISA.  Am. Complaint ¶¶ 42, 45.  The factual basis for this assertion is also provided, that BCBS-SC "had and/or exercised discretion in paying benefits on claims." *Id.* ¶ 44.  These express allegations are consistent with the inferences drawn by the court with respect to the original complaint and, consequently, support a finding that the factual allegations are sufficient to state a claim against BCBS-SC under ERISA for breach if fiduciary duty. *See Wilmington Shipping*, 496 F.3d at 343 (noting that (1) definition of fiduciary "is couched in terms of functional control and authority over the plan, thus necessitating that courts 'examine the conduct at issue when determining whether an individual is an ERISA fiduciary[,]'" and (2) "[a] person may be an ERISA fiduciary for some purposes but not for others.").

[14]  This is not to suggest any predetermination that Plaintiffs will prevail in establishing that BCBS-SC exercised discretionary authority and, therefore, acted as a fiduciary.  As noted in *HealthSouth Rehabilitation Hosp. v. American Nat'l Red Cross*, 101 F.3d 1005, 1009 (4th Cir. 1996), an entity which plays a limited role in processing claims but has no discretionary authority is not an ERISA fiduciary (or at least not for the purposes at issue in *HealthSouth*).  Whether BCBS-SC's role under the Blue Card Program was so limited (either on paper or in fact) cannot, however be determined on the present record.

15

*Id.*, 496 F.3d at 343 (quoting 29 U.S.C. § 1002(21)(A)) (emphasis in original).[15]

**Breach of Fiduciary Duty**.  Plaintiffs allege that BCBS-SC breached its fiduciary duty by failing to provide accurate pricing information or otherwise to assure that McLeod was paid based on the rates allowed under its Preferred Provider Agreement.  What constitutes a proper claim for breach of fiduciary duty under ERISA (29 U.S.C. § 1132(a)(2)) remains a developing area of the law.  For example, in *LaRue v. DeWolfe, Boberg & Assoc.*, 552 U.S. 248 (2008), the Court held that "although [§1132(a)(2)] does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account."  The Fourth Circuit had concluded otherwise based on a belief that 29 U.S.C. § 1132(a)(2) only allowed for relief on behalf of the Plan as a whole.

While the allegations in the present action are dissimilar from those in *LaRue*, the recency of that decision suggests a continuing degree of uncertainty as to precisely what actions might be remediable as a breach of fiduciary duty.  In any event, the claim for breach of fiduciary duty in this action is pursued by Plan fiduciaries, seeking recovery for the Plan, against an entity they allege exercised discretionary authority and owed but breached fiduciary obligations to the Plan.  Whether or not these allegations will be proven, the court finds them sufficient to state a claim for breach of fiduciary duty under ERISA, 29 U.S.C. § 1132(a)(2).

---

[15]  The initial complaint in *Wilmington Shipping* asserted only ERISA claims.  It was filed by a pension plan participant against the entity responsible for management of the pension plan's assets. The state law claims, which were ultimately held to be preempted, were added when the defendant denied that it acted as a plan fiduciary.  The court rejected this characterization of defendant's status because the "focus" of the claims was on defendant's "management of Plan assets, conduct that, irrespective of [defendant's] denial of fiduciary status, clearly lies near the heartland of ERISA's coverage."  *Wilmington Shipping*, 496 F.3d at 343 (addressing summary judgment ruling).

**Equitable Relief.** Plaintiffs' ERISA claim for equitable relief (presumably pursued under 29 U.S.C. § 1132(a)(3)(B)) seems less likely to be viable against BCBS-SC. This is both for reasons addressed below with regard to the same claim against McLeod and because there is no allegation that BCBS-SC retained any portion of the alleged overpayments.[16] Nonetheless, the court finds this claim inappropriate for resolution on motion to dismiss because the actual workings of the relevant programs (and manner of compensation to BCBS-SC) cannot be determined from the complaint or, assuming they may properly be considered at this stage, any other document in the present record.[17]

## C.     ERISA Claim against McLeod.

Plaintiffs assert a single ERISA claim against McLeod: for equitable relief "to recover improperly paid benefits." Amended Complaint ¶ 36. This claim, which is also asserted against BCBS-SC, provides only a generic reference to 29 U.S.C. § 1132(a) "and other provisions." For purposes of this order, the court assumes Plaintiffs are proceeding under Section 1132(a)(3)(B)(i) which allows a fiduciary to pursue an action "to obtain other appropriate equitable relief" to redress violations of ERISA's statutory provisions or the terms of an employee benefit plan.

---

[16] Other potential difficulties with this claim are addressed below as to McLeod. Despite these potential difficulties, the court finds the pleadings adequate to allow this claim to proceed.

[17] In *Mertens v. Hewitt Assoc.*, 508 U.S. 248 (1993), the Supreme Court held that ERISA's provision allowing pursuit of "other appropriate equitable relief" did not authorize suits for money damages against nonfiduciaries who knowingly participated in a fiduciary's breach.. The court noted that such malfeasance would, prior to ERISA, have subjected the nonfiduciary to liability under state trust law. The court declined to decide whether such claims were preempted by ERISA, noting that, even if they were, "vague notions of the statute's 'basic purpose' [of protecting Plans and their participants] are . . . inadequate to overcome the words of its text regarding the *specific* issue under consideration." *Id.* at 261 (emphasis in original). Thus, under *Mertens*, there could be no claim against BCBS-SC under the separate "other appropriate equitable relief" provisions of Section 1132 (a)(3)(B) if it is not a fiduciary, even if it is established that BCBS-SC participated in a breach of fiduciary duty by BCBS-Alabama. That leaves open the question of whether a state law claim might survive if BCBS-SC is not found to be a fiduciary. *See infra* Discussion § II.

17

The relief available under 29 U.S.C. § 1132(a)(3)(B)(i) is limited to traditional equitable relief. *See, e.g., Great-West Life & Ann. Ins. Co. v. Knudson*, 534 U.S. 204 (2002). As the Court explained in *Knudson*, a claim which seeks monetary relief (such as a claim for repayment of benefits) is normally a claim for damages, rather than a claim for "appropriate equitable relief." *Id.* 534 U.S. at 214-20. Thus, this section does not support recovery of funds under theories of restitution or specific performance where the funds at issue are neither subject to an equitable lien nor in the hands of the defendant-beneficiary. *Knudson,* 504 U.S. at 214. By contrast, funds may be recovered under this section if an equitable lien has been or may still be imposed on the specific funds. *Sereboff v. Mid Atlantic Med. Svcs., Inc.*, 547 U.S. 356 (2006) (holding plan's claim for restitution could be pursued under 29 U.S.C. § 1132(a)(3)(B) where a lien was imposed prior to distribution of proceeds of third-party litigation). What other equitable remedies may be available under this section remains an open issue. *See generally Knudson*, 534 U.S. at 220 (declining to address whether "petitioners could have obtained equitable relief against [the persons to whom and trust to which the assets were distributed].")

As subsequent decisions have noted, *Knudson* and *Sereboff* cast doubt on the continued viability of the Fourth Circuit's decision in *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985 (4th Cir. 1990), which allowed plans to recover payments from beneficiaries or providers under a common law unjust enrichment theory.[18] They do not, however, close the door to the possibility

---

[18] *See Provident Life & Acc. Ins. Co. v. Cohen,* 423 F.3d 413 (4th Cir. 2005) (noting, first, that "the justification for the court's recognition of a federal *common law* unjust enrichment claim in *Waller* is in serious doubt, as it is no longer debatable that Provident has an "explicit remedy" under § 1132(a)(3)" and, second, that the relief sought in *Cohen* (a refund of benefits payments) was not available under § 1132(a)(3)(B) because it would constitute "a legal remedy in the form of a money judgment . . . not any 'equitable relief'"); *Cooperative Benefit Adm'rs., Inc. v. Ogden*, 367 F.3d 323, 333-35 (5th Cir. 2004) (suggesting *Waller*'s allowance of a federal common law remedy

of relief under Section 1132(a)(3)(B)(i).  Whether such relief is available may depend on whether the Plan and any incorporated or related agreements (*e.g.*, the Blue Card Program and McLeod's Preferred Provider Agreement) include provisions for reimbursement of overpayments to a provider and whether the facts and controlling documents support imposition of an equitable lien or constructive trust.  Resolution of these issues requires both factual and legal development.  The court, therefore, declines to dismiss the ERISA claim against McLeod.

## II.    STATE LAW CLAIMS

BCBS-SC and McLeod argue that Plaintiffs' state law claims should be dismissed because they are preempted by ERISA.  They also argue that the nonavailability of an ERISA remedy does not preclude a finding of preemption.

While the court is inclined to agree with the first argument, it does not find the matter entirely free from doubt for reasons discussed below.  As to the second argument, Defendants are correct that the nonavailability of an ERISA remedy does not preclude a finding of preemption.  *See generally Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 342-43 (4th Cir. 2007) ("The central question is not whether a particular defendant is a fiduciary, or whether the preemption decision would create a gap in the law with respect to suits against nonfiduciaries, but rather [ ] whether the action *relates* to any employee benefit plan. (internal marks omitted)).[19]  This

_____

of "unjust enrichment" was at odds with later Supreme Court decisions limiting the scope of the statutory allowance of "appropriate equitable relief").

[19] *See also id.* at 342(summarizing the three categories of state law preempted under ERISA and noting the common feature is that all "implicate the relations among the traditional ERISA plan entities" (internal citation omitted)); *id.* at 343 (citing with approval *Howard v. Parisian, Inc.,* 807 F2d 1560, 1565 (11th Cir. 1987) for the holding "that Congress's failure to provide for comprehensive relief against nonfiduciaries does not alter the principle that state-law actions against nonfiduciaries are preempted if they relate to an ERISA-covered plan").

does not, however, mean that the absence of an ERISA remedy is of no significance.  First, as noted above, a finding of *complete preemption*, which is necessary for removal requires a finding that the state law claims at issue are not merely preempted, but "fit within the scope of ERISA's civil enforcement provisions."  *See supra* n.9 (discussing distinction between conflict and complete preemption explained in *Sonoco Products Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366 (4th Cir. 2003)).  While this may not preclude a finding of complete preemption despite the absence of an ERISA remedy for the alleged wrong, it does suggest caution where ERISA provides *no* remedy for the *category* of harm alleged or where the relationships between the parties are not within the categories of relationship generally governed by ERISA.  Second, facts which support a finding of non-preemption might also support a finding that the claims are so attenuated from the purposes of ERISA that preemption is not appropriate.  *See generally Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n. 21 (1983) ("[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan."); *Wilmington Shipping*, 496 F.3d at 341 (noting "ERISA's preemptive scope is not unbounded"); *see also Knudson*, 534 U.S. at 220 ("We express no opinion as to whether . . . a direct action by petitioners against respondents asserting state-law claims such as breach of contract would be preempted by ERISA.").  Collectively, these considerations, the early stage of these proceedings, and the lack of clear precedent addressing circumstances similar to those in this litigation persuade the court that a final determination as to preemption of state law should be reserved until after completion of discovery.

_____

**Preemption of State Law Claims.**   As noted above, the mere fact that an ERISA plan is involved in this litigation does not require a finding of ERISA preemption.  *See Shaw*, 463 U.S. at 100 n. 21; *Wilmington Shipping*, 496 F.3d at 341.  ERISA does not, for example, preempt "lawsuits *against* ERISA plans for run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan" even though such claims involve and affect the plan and its trustees.   *Mackey v. Lanier Collection Agency & Svc., Inc.*, 486 U.S. 825, 833 (1988) (quoted in *Wilmington Shipping*, 496 F.3d at 342).   Neither does ERISA preempt every claim by an ERISA plan.  *See Sonoco Products,* 338 F.3d. at 373 (discussing and distinguishing complete preemption from conflict preemption) (discussed *supra* at 11-13).

In determining whether a claim falls within or outside the scope of ERISA's preemption provisions, courts go "beyond the unhelpful text [of ERISA] and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995).  Those objectives suggest an intent to preempt at least three categories of state law including, as relevant here, (1) laws which mandate how benefits will be administered; (2) laws which preclude uniform administrative practice; and (3) laws providing alternative enforcement mechanisms for employees to obtain plan benefits.  *Id.* at 658.

To the extent the Blue Card Program and related Preferred Provider Agreements were incorporated into the Plan, whether by virtue of the ASA or references to the Blue Card Program in the Plan documents, the claims in this action relate to the administration of an employee benefit plan.  On the present record, this court believes this to be the case.  Thus, if McLeod, as assignee of China, were pursuing a claim against the Plan for underpayment of benefits under its Preferred

21

Provider Agreement, the claim would raise a claim involving the administration of benefits. That the claims in this case arise from an attempt to recoup overpayments should not modify the resulting conclusion that the claims are preempted because they involve the administration of benefits. *See generally Waller*, 906 F.2d 985(discussed *supra* Discussion § I.C.). The same conclusion is true as to the claims against BCBS-SC because its liability, if any, arises from its alleged role in the administration of benefits under the Plan. In short, assuming the provisions of the Blue Card Program and Preferred Provider Agreements are, effectively, incorporated into the Plan, ERISA would appear to preempt any state law claims and provide the only potential remedies.

The actual relationship of the parties, and whether the Blue Card Program and Preferred Provider Agreement are incorporated into the Plan are, however, not free from doubt on the present record.[20] These concerns, and the cases specific to preferred provider agreements, raise at least some doubt as to whether ERISA preempts *all* of Plaintiffs' state law claims either under a theory of complete preemption or under a theory of conflict preemption.[21]

**Preferred Provider Agreement Litigation.** Some courts have held that state law, rather than ERISA, controls disputes as to the terms and applicability of preferred provider agreements, at least where the dispute is solely between the putative parties to the preferred provider agreement (such as the insurer and provider) and the dispute may be resolved without reference to terms of an employee benefit plan. For example, in *Blue Cross of Calif. v. Anesthesia Care Associates Med.*

---

[20] At least in some respects, Defendants' arguments seem to reject the position that the terms of the Blue Card Program and benefits of the Preferred Provider Agreements should be read into the Plan.

[21] Unless one or more claims are subject to complete preemption, this court lacks jurisdiction to resolve the issue of conflict preemption. *See generally Sonoco Products*, 338 F.3d at 371 (discussed *supra* Discussion § I.A,).

22

*Group, Inc.*, 187 F.3d 1045 (9th Cir. 1999), the Ninth Circuit held that "the Providers' claims, which arise from the terms of their provider agreements and could not be asserted by their patient-assignors, are not claims for benefits under the terms of ERISA plans, and hence do not fall within [ERISA's remedial provisions]." *Id.* at 1050-51 (explaining that the providers' claims arose from alleged breach of provider agreements "regarding fee schedules, and the procedure for setting them, not what charges are 'covered' under the [relevant ERISA] Plan."). At least two district court cases have reached a similar conclusion under similar circumstances. *See Boca Raton Community Hospital, Inc.,* 2008 WL 728538 *6-7 (S.D. Fla. 2008) (holding that ERISA did not preempt hospital's state law claims against insurer for underpayment of claims even though payment at issue was made to hospital as assignee of patient's rights under ERISA-governed plan where resolution of dispute turned on insurer's right to apply discounted rates under a separate agreement between hospital and insurer); *Crossroads of Texas, LLC v. Great-West Life & Ann. Ins. Co.*, 467 F. Supp. 2d 705 (S.D. Tex. 2006) (holding ERISA did not preempt state law claim by medical providers for damages due to insurance company's improper continued use of preferred provider rates after cancellation of contract with third-party through which the rates were available to the insurer because claims were independent of any ERISA plan).

The cases listed above are similar to the present action in that they involved the propriety of charges under a preferred provider agreement. They are dissimilar in that the claims were asserted by providers seeking additional payments, rather than by payors seeking reimbursement of overpayments. This distinction is less significant than the ability to resolve those claims without reference to the Plan. In this case, the court believes reference to the Plan is necessary because the

23

source of the right to the rates under the relevant Preferred Provider Agreement was through the Plan and incorporated Blue Card Program.

**Conclusion as to Preemption.**  For the reasons set out above, and despite the court's preliminary conclusion that one or both of the state-law claims in the original complaint were subject to complete preemption, the court denies Defendants' motions to the extent they seek to dismiss all state-law claims.  This denial is without prejudice to renewal on motion for summary judgment after the conclusion of discovery.[22]

## CONCLUSION

For the reasons set forth above, the court denies Defendants' motions to dismiss without prejudice to renewal on motion(s) for summary judgment after the conclusion of discovery.

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
February 24, 2011

---

[22]  The parties are reminded that ERISA allows for an award of attorneys' fees and costs against either party.  29 U.S.C. § 1132(g).  This fee-shifting provision should provide ample motivation to both sides to proceed in the most cost-efficient means possible in resolving this dispute including through cooperative discovery and, as appropriate, mediation or settlement negotiations as to both factual and legal issues.  As to the issue of discovery, the parties are encouraged to engage in an early exchange of information as to the rates which should have been charged under McLeod's Preferred Provider Agreement for the services provided to China.  Plaintiffs should, at the same time, specify which, if any, charges they contend were for services not rendered.